GRELLAS SHAH LLP
DAVID I. SIEGEL, ESQ. (4259610)
(dsiegel@grellas.com)
20400 Stevens Creek Blvd, Suite 280
Cupertino, CA  95014
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

*Attorneys for Plaintiffs*
*Rolan Marat, Stela Maksutaj, and Christine Reilly*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROLAN MARAT, an individual, STELA MAKSUTAJ, an individual; and CHRISTINE REILLY, an individual,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNIVERSAL PRODUCT COMPANY, INC., a Delaware corporation, and Does 1-50, inclusive,<br><br>*Defendants.* | Case No.: _____<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>Date Action Filed: |

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

COMPLAINT

Plaintiffs Rolan Marat ("Marat"), Stela Maksutaj ("Maksutaj"), and Christine Reilly ("Reilly") (collectively, "Plaintiffs") bring this action against defendants Universal Production Company, Inc., ("UPC") and Does 1–50, and allege as follows:

## PARTIES

1.      Marat is an individual residing in the State of California.

2.      Maksutaj is an individual residing in the State of New Jersey.

3.      Reilly is an individual residing in the State of New Jersey.

4.      UPC is a Delaware corporation with its principal place of business in New York, New York.

5.      Plaintiffs are ignorant of the true names and capacities, whether individual, corporate or otherwise, of defendants named herein as Does 1 through 50 ("Doe Defendants"). Plaintiffs sue said defendants by their fictitious names.  Plaintiffs will seek leave to amend this Complaint to assert allegations against the Doe Defendants when their true involvement in these matters and capacities are ascertained.  Plaintiffs are informed and believe, and on that basis allege, that each of the Doe Defendants are in some way legally responsible and liable to Plaintiffs with respect to the matters set forth herein.

## JURISDICTION

6.      This Court has original jurisdiction over this action under 28 U.S.C. § 1331 because the action arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA").

7.      This Court has supplemental jurisdiction over the state law claims asserted because they are part of the same case or controversy as the federal claim over which this Court has jurisdiction.  28 U.S.C. § 1367(a).

8.      Defendant UPC is subject to personal jurisdiction in the State of New York because it maintains a principal place of business in New York and thus is deemed to be domiciled within the State.

## VENUE

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because defendant UPC maintains its principal place of business in this district.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1

**BACKGROUND**

2      10.     UPC was formed on April 18, 2018.  It develops a technology platform for

3   wholesalers to list inventory for sale and purchase by retailers.

4      11.     Marat and UPC entered an Employment Agreement ("Marat Agreement") on

5   June 9, 2020.  A true and correct copy of the Marat Agreement is attached as **Exhibit A**.

6      12.     Under the Marat Agreement, UPC employed Marat as a Senior Software

7   Engineer/Technical Lead and agreed to pay Marat an initial base salary at the gross annual rate

8   of $185,000.

9      13.     The Marat Agreement specifies that it shall be governed by California law.

10      14.     Between May 2021 and August 2021, UPC failed to pay Marat's salary in full,

11   or paid late, multiple times.  Unpaid salary of at least $42,359.82 is still due and owing to Marat.

12      15.     Marat resigned his employment at UPC effective August 6, 2021.

13      16.     UPC failed to pay Marat all or any wages due at the time his resignation became

14   effective or within 72 to hours of his resignation, nor has it subsequently paid any such wages.

15      17.     Maksutaj and UPC entered an Employment Agreement ("Maksutaj Agreement")

16   on May 12, 2020.  A true and correct copy of the Maksutaj Agreement is attached as **Exhibit B**.

17      18.     Under the Maksutaj Agreement, UPC employed Maksutaj as an Account

18   Executive.  Maksutaj was entitled to an initial base salary at the gross annual rate of $80,000,

19   and total on target earnings rate of $120,000.

20      19.     Maksutaj's salary was later raised to $90,000 base salary plus $130,000 on target

21   earnings.

22      20.     The Maksutaj Agreement specifies that it shall be governed by California law.

23      21.     Between May 2021 and August 2021, UPC failed to pay Maksutaj's salary in

24   full, or paid late, multiple times.  Unpaid salary of at least $36,273.99 is still due and owing to

25   Maksutaj.

26      22.     Maksutaj also incurred numerous expenses on behalf of UPC, which the

27   company has failed to reimburse, in the amount of at least $3,774.

28

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

23.     Reilly and UPC entered an Employment Agreement ("Reilly Agreement") on July 6, 2020.  A true and correct copy of the Reilly Agreement is attached as **Exhibit C**.

24.     Under the Reilly Agreement, UPC employed Reilly as an Sales Development Representative.  Reilly was entitled to an initial base salary at the gross annual rate of $65,000, and total on target earnings rate of $85,000.

25.     The Reilly Agreement specifies that it shall be governed by California law.

26.     On October 1, 2020, UPC and Reilly entered into an amendment to the Reilly Agreement (the "Reilly Amendment") which raised Reilly's annual base salary to $85,000 and her on target earnings rate to $105,000.  A true and correct copy of the Reilly Amendment is attached as **Exhibit D**.

27.     On March 16, 2021, UPC and Reilly entered into a second amendment to the Reilly Agreement (the "Second Reilly Amendment") which raised Reilly's annual base salary to $110,000 and provided that Reilly would be eligible to earn a Product Performance Bonus up to $10,000 annually.  A true and correct copy of the Second Reilly Amendment is attached as **Exhibit E**.

28.     Between May 2021 and August 2021, UPC failed to pay Reilly's salary in full, or paid late, multiple times.  Unpaid salary of at least $32,081 is still due and owing to Reilly.

29.     Reilly also incurred numerous expenses on behalf of UPC, which the company has failed to reimburse, in the amount of at least $558.36.

## FIRST COUNT

### (Breach of Written Contract)

30.     Plaintiffs hereby incorporate by reference each and every allegation in paragraphs 1 through 29 of this complaint as though said paragraphs were fully set forth herein.

31.     UPC entered into the Marat Agreement, the Maksutaj Agreement, and the Reilly Agreement (collectively, the "Employment Agreements,") with Marat, Maksutaj, and Reilly, respectively.

32.     Marat, Maksutaj, and Reilly performed all of their obligations under their respective Employment Agreements with UPC.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

33.     UPC breached each of the Employment Agreements by failing to pay salaries due to Marat, Maksutaj, and Reilly in a timely manner, or at all.

34.     UPC further breached each of the Employment Agreements by failing to reimburse Marat, Maksutaj, and Reilly for expenditures made on UPC's behalf in the course and scope of their employment by UPC.

35.     As a proximate result of UPC's breach of each of the Employment Agreements, Marat, Maksutaj, and Reilly have each suffered damages.

WHEREFORE plaintiffs Marat, Maksutaj, and Reilly pray for relief as set forth below.

## SECOND COUNT

**(Failure to Pay Minimum Wage, Fair Labor Standards Act 29 U.S.C. § 206)**

36.     Plaintiffs hereby incorporate by reference each and every allegation in paragraphs 1 through 35 of this complaint as though said paragraphs were fully set forth herein.

37.     The Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq., applied to plaintiffs' employment with UPC at all times relevant herein.

38.     Section 206 of the FLSA, 29 U.S.C. § 206(a)(1)(C), mandates that employers pay all employees engaged in commerce or in the production of goods for commerce minimum wages for their work in an amount set by federal law.  Section 218 of the FLSA, 29 U.S.C. § 218(a), provides that employers pay such minimum wages as established by state law, should it be higher than the federal minimum.

39.     UPC failed to pay each plaintiff the minimum wage for all hours worked, or any wages at all, during one or more pay periods between October 2018 and August 2021.

40.     Defendant acted willfully, intentionally, and with reckless disregard as to whether the FLSA prohibited its conduct.

41.     Because of UPC's unlawful failure and refusal to pay plaintiffs minimum wages, or any wages at all, for one or more pay periods between October 2018 and August 2021, plaintiffs are entitled to recover unpaid minimum wages, including interest, in amounts to be proven at trial, as well as reasonable attorney's fees and costs, pursuant to Section 216(b) of the FLSA.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

42.     At all relevant times, UPC has been aware of the provisions of the FLSA.  UPC's actions and omissions as alleged were knowing, willful, bad faith, and reckless violations of 29 U.S.C. § 206 within the meaning of 29 U.S.C. § 255(a).

WHEREFORE plaintiffs pray for relief as set forth below.

## THIRD COUNT

### (Failure to Pay Wages When Due, Cal. Lab. Code § 204)

43.     Plaintiffs hereby incorporate by reference each and every allegation in paragraphs 1 through 42 of this complaint as though said paragraphs were fully set forth herein.

44.     The California Labor Code applied to plaintiffs' employment with UPC at all times relevant herein.

45.     Cal. Lab. Code § 204 requires that wages earned are due and payable twice during each calendar month on days designated in advance as regular paydays, or once per month for certain enumerated categories of employees.

46.     UPC failed to pay each plaintiff the wages earned when due for one or more pay periods between October 2018 and August 2021.

47.     Each plaintiff has requested payment of their respective unpaid wages.

48.     Plaintiffs are entitled to statutory prejudgment interested under Cal. Lab. Code § 218.6 in an amount to be proven at trial.

49.     Plaintiffs are further entitled to attorney's fees and costs under Cal. Lab. Code § 218.5.

WHEREFORE plaintiffs pray for relief as set forth below.

## FOURTH COUNT

### (Failure to Pay Wages at Termination, Cal. Lab. Code § 202)

50.     Plaintiffs hereby incorporate by reference each and every allegation in paragraphs 1 through 49 of this complaint as though said paragraphs were fully set forth herein.

51.     Cal. Lab. Code § 202(a) provides that, if an employee quits his or her employment, all wages earned but unpaid are due and payable within 72 hours thereafter.

52.     Marat resigned his employment with UPC on August 6, 2021.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

53.     UPC failed to pay Marat wages earned but unpaid within 72 hours of his resignation, or at any time thereafter.

54.     Marat has requested payment of his wages.

55.     Plaintiff Marat is entitled to statutory prejudgment interested under Cal. Lab. Code § 218.6 in an amount to be proven at trial.

56.     Plaintiff Marat is further entitled to attorney's fees and costs under Cal. Lab. Code § 218.5.

WHEREFORE plaintiff Marat prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully pray for judgment against defendant and in their favor as follows:

### **On the First Count**

1. For general and special damages in an amount to be proven at trial;

2. For pre-judgment interest and post-judgment interest in an amount to be proven at trial;

3. For costs of suit; and

4. For such other and further relief as the Court deems just and proper.

### **On the Second Count**

1. For general and special damages in an amount to be proven at trial;

2. For pre-judgment interest and post-judgment interest in an amount to be proven at trial;

3. For costs of suit;

4. For reasonable attorney's fees; and

5. For such other and further relief as the Court deems just and proper.

### **On the Third Count**

1. For general and special damages in an amount to be proven at trial;

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

2. For pre-judgment interest and post-judgment interest in an amount to be proven at trial;

3. For costs of suit;

4. For reasonable attorney's fees; and

5. For such other and further relief as the Court deems just and proper.

**On the Fourth Count**

1. For general and special damages in an amount to be proven at trial;

2. For statutory penalties in an amount to be proven at trial;

3. For pre-judgment interest and post-judgment interest in an amount to be proven at trial;

4. For costs of suit;

5. For reasonable attorney's fees; and

6. For such other and further relief as the Court deems just and proper.

## <u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demands a trial by jury on all claims asserted herein.

Respectfully submitted,

Dated: November 23, 2021            GRELLAS SHAH LLP

By:   /S/   David I. Siegel, Esq.
_____
David I. Siegel, Esq.
Attorneys for Plaintiffs
Rolan Marat, Stela Maksutaj,
and Christine Reilly

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

7

COMPLAINT

# Exhibit A

**UNIVERSAL PRODUCT COMPANY, INC.**
954 Lexington Ave. #332
New York, N 10021


June 9, 2020


Rolan Marat



Re:      **<u>EMPLOYMENT AGREEMENT</u>**

Dear Rolan:

On behalf of UNIVERSAL PRODUCT COMPANY, INC., a Delaware corporation (the "<u>Company</u>"), I am pleased to offer you a position as Senior Software Engineer / Technical Lead. Your employment by the Company shall be governed by the following terms and conditions (this "<u>Agreement</u>"):

1.      **<u>Duties and Scope of Employment</u>.**

(a) **<u>Position</u>.**   For the term of your employment under this Agreement (your "<u>Employment</u>"), the Company agrees to employ you in the position of Senior Software Engineer / Technical Lead or in such other position as the Company subsequently may assign to you.   You will report to Sean Flannagan, or to such other person as the Company subsequently may determine.  You will perform the duties and have the responsibilities and authority customarily performed and held by an employee in your position or as otherwise may be assigned or delegated to you by the Company's management.

(b) **<u>No Conflicting Obligations</u>.**  You represent and warrant to the Company that you are under no obligations or commitments, whether contractual or otherwise, that are inconsistent with your obligations under this Agreement.   In connection with your Employment, you shall not use or disclose any trade secrets or other proprietary information or intellectual property in which you or any other person has any right, title or interest and your Employment will not infringe or violate the rights of any other person.  You represent and warrant to the Company that you have returned all property and confidential information belonging to any prior employer.

(c) **<u>Commencement Date</u>.**  You shall commence full-time Employment as soon as reasonably practicable and in no event later than June 29, 2020.

2.      **Cash and Incentive Compensation.**

(a) **Salary.**  The Company shall pay you as compensation for your services an initial base salary at a gross annual rate of $185,000.   Such salary shall be payable in accordance with the Company's standard payroll procedures.

(b) **Stock Options.**  Subject to the approval of the Company's Board of Directors (the "Board"), the Company shall grant you a stock option covering **3%** of the Company's Common Stock (the "Option").   The Option shall be granted as soon as reasonably practicable after the date of this Agreement or, if later, the date you commence full-time Employment.  The exercise price per share will be equal to the fair market value per share on the date the Option is granted, as determined by the Board in good faith compliance with applicable guidance in order to avoid having the Option be treated as deferred compensation under Section 409A of the Internal Revenue Code of 1986, as amended.   There is no guarantee that the Internal Revenue Service will agree with this value.  You should consult with your own tax advisor concerning the tax risks associated with accepting an option to purchase the Company's Common Stock.  The term of the Option shall be ten (10) years, subject to earlier expiration in the event of the termination of your services to the Company. The Option shall vest and become exercisable at the rate of 25% of the total number of option shares after the first twelve (12) months of continuous service and the remaining option shares shall become vested and exercisable in equal monthly installments over the next three (3) years of continuous service.  The Option will be an incentive stock option to the maximum extent allowed by the tax code and shall be subject to the other terms and conditions set forth in the Company's 2018 Stock Plan and in the Company's standard form of Stock Option Agreement.

3.      **Employee Benefits.**      During your Employment, you shall be eligible to participate in the employee benefit plans maintained by the Company and generally available to similarly situated employees of the Company, subject in each case to the generally applicable terms and conditions of the plan in question and to the determinations of any person or committee administering such plan.

4.      **Business Expenses.**   The Company will reimburse you for your necessary and reasonable business expenses incurred in connection with your duties hereunder upon presentation of an itemized account and appropriate supporting documentation, all in accordance with the Company's generally applicable policies.

5.      **Termination.**

(a) **Employment at Will.**   Your Employment shall be "at will," meaning that either you or the Company shall be entitled to terminate your Employment at any time and for any reason, with or without Cause.   Any contrary representations that may have been made to you shall be superseded by this Agreement.  This Agreement shall constitute the full and complete agreement between you and the Company on the "at-will" nature of your

Doc ID: 3b0b4ed13cc004c1b064cc88c6c4c1bff671d795

Employment, which may only be changed in an express written agreement signed by you and a duly authorized officer of the Company.

(b) **Rights Upon Termination.**  Except as expressly provided in herein, upon the termination of your Employment, you shall only be entitled to the compensation and benefits earned and the reimbursements described in this Agreement for the period preceding the effective date of the termination.

6. **Pre-Employment Conditions.**

(a) **Confidentiality Agreement.**  Your acceptance of this offer and commencement of Employment with the Company is contingent upon the execution, and delivery to an officer of the Company, of the Company's Confidential Information and Invention Assignment Agreement in the form attached as <u>Attachment A</u> hereto (the "<u>Confidentiality Agreement</u>"), prior to or on your Start Date (as defined below).

(b) **Right to Work.**  For purposes of federal immigration law, you will be required to provide to the Company documentary evidence of your identity and eligibility for employment in the United States.  Such documentation must be provided to us within three (3) business days of your Start Date, or our employment relationship with you may be terminated.

(c) **Verification of Information.**  This offer of Employment is also contingent upon the successful verification of the information you provided to the Company during your application process, as well as a general background check performed by the Company to confirm your suitability for Employment.  By accepting this offer of Employment, you warrant that all information provided by you is true and correct to the best of your knowledge, you agree to execute any and all documentation necessary for the Company to conduct a background check and you expressly release the Company from any claim or cause of action arising out of the Company's verification of such information.

7. **Successors.**

(a) **Company's Successors.**  This Agreement shall be binding upon any successor (whether direct or indirect and whether by purchase, lease, merger, consolidation, liquidation or otherwise) to all or substantially all of the Company's business and/or assets.   For all purposes under this Agreement, the term "<u>Company</u>" shall include any successor to the Company's business or assets that becomes bound by this Agreement.

(b) **Your Successors.**  This Agreement and all of your rights hereunder shall inure to the benefit of, and be enforceable by, your personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees.

Doc ID: 3b0b4ed13cc004c1b064cc88c6c4c1bff671d795

8.    **Miscellaneous Provisions.**

(a) **Notice.**    Notices and all other communications contemplated by this Agreement shall be in writing and shall be deemed to have been duly given when personally delivered or when mailed by U.S. registered or certified mail, return receipt requested and postage prepaid.  In your case, mailed notices shall be addressed to you at the home address that you most recently communicated to the Company in writing.   In the case of the Company, mailed notices shall be addressed to its corporate headquarters, and all notices shall be directed to the attention of its Secretary.

(b) **Modifications and Waivers.**    No provision of this Agreement shall be modified, waived or discharged unless the modification, waiver or discharge is agreed to in writing and signed by you and by an authorized officer of the Company (other than you).  No waiver by either party of any breach of, or of compliance with, any condition or provision of this Agreement by the other party shall be considered a waiver of any other condition or provision or of the same condition or provision at another time.

(c) **Whole Agreement.**   No other agreements, representations or understandings (whether oral or written and whether express or implied) which are not expressly set forth in this Agreement have been made or entered into by either party with respect to the subject matter hereof.   This Agreement and the Confidentiality Agreement contain the entire understanding of the parties with respect to the subject matter hereof.

(d) **Withholding Taxes.**    All payments made under this Agreement shall be subject to reduction to reflect taxes or other charges required to be withheld by law.

(e) **Choice of Law and Severability.**    This Agreement shall be interpreted in accordance with the laws of the State of California without giving effect to provisions governing the choice of law.   If any provision of this Agreement becomes or is deemed invalid, illegal or unenforceable in any applicable jurisdiction by reason of the scope, extent or duration of its coverage, then such provision shall be deemed amended to the minimum extent necessary to conform to applicable law so as to be valid and enforceable or, if such provision cannot be so amended without materially altering the intention of the parties, then such provision shall be stricken and the remainder of this Agreement shall continue in full force and effect.  If any provision of this Agreement is rendered illegal by any present or future statute, law, ordinance or regulation (collectively, the "Law") then that provision shall be curtailed or limited only to the minimum extent necessary to bring the provision into compliance with the Law.   All the other terms and provisions of this Agreement shall continue in full force and effect without impairment or limitation.

(f) **No Assignment.**    This Agreement and all of your rights and obligations hereunder are personal to you and may not be transferred or assigned by you at any time. The Company may assign its rights under this Agreement to any entity that assumes the

4

Doc ID: 3b0b4ed13cc004c1b064cc88c6c4c1bff671d795

Company's obligations hereunder in connection with any sale or transfer of all or a substantial portion of the Company's assets to such entity.

(g) **<u>Counterparts.</u>**    This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*[Signature Page Follows]*

5

Doc ID: 3b0b4ed13cc004c1b064cc88c6c4c1bff671d795

   We are all delighted to be able to extend you this offer and look forward to working with you.  To indicate your acceptance of the Company's offer, please sign and date this letter in the space provided below and return it to me on or before June 9, 2020.  Please indicate the date (either on or before the aforementioned date) on which you expect to begin work in the space provided below (the "Start Date").

                                        Very truly yours,

                                        UNIVERSAL PRODUCT COMPANY,
                                        INC.

                                        By:  *Michael Murphy*
                                             _____
                                             (signature)

                                        Name:  Michael Murphy
                                               _____

                                        Title:  CEO
                                                _____

ACCEPTED AND AGREED:

Rolan Marat

*rolan marat*
_____
(signature)

 06 / 09 / 2020
_____
Date

Anticipated Start Date:  06/29/2020
                         _____

Attachment A:  Confidential Information and Invention Assignment Agreement

Doc ID: 3b0b4ed13cc004c1b064cc88c6c4c1bff671d795

**<u>ATTACHMENT A</u>**

**CONFIDENTIAL INFORMATION AND
INVENTION ASSIGNMENT AGREEMENT**

*(See Attached)*

Doc ID: 3b0b4ed13cc004c1b064cc88c6c4c1bff671d795

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Rolan x UPC Employment Agreement - updated |
| **FILE NAME** | UPC - Employment ...lan Marat - 2.pdf |
| **DOCUMENT ID** | 3b0b4ed13cc004c1b064cc88c6c4c1bff671d795 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

**SENT**
**06 / 09 / 2020**
16:07:31 UTC
Sent for signature to Michael Murphy (murphy@upc.co) and Rolan Marat (arolan@gmail.com) from murphy@upc.co
IP: 108.34.208.78

**VIEWED**
**06 / 09 / 2020**
16:08:00 UTC
Viewed by Michael Murphy (murphy@upc.co)
IP: 108.34.208.78

**VIEWED**
**06 / 09 / 2020**
17:38:48 UTC
Viewed by Rolan Marat (arolan@gmail.com)
IP: 73.231.240.240

**SIGNED**
**06 / 09 / 2020**
16:08:41 UTC
Signed by Michael Murphy (murphy@upc.co)
IP: 108.34.208.78

**SIGNED**
**06 / 09 / 2020**
17:47:33 UTC
Signed by Rolan Marat (arolan@gmail.com)
IP: 73.231.240.240

**COMPLETED**
**06 / 09 / 2020**
17:47:33 UTC
The document has been completed.

Exhibit B

**UNIVERSAL PRODUCT COMPANY, INC.**
954 Lexington Ave. #332
New York, New York 10021

May 12, 2020

Stela Maksutaj

Re:     **EMPLOYMENT AGREEMENT**

Dear Stela,

On behalf of UNIVERSAL PRODUCT COMPANY, INC., a Delaware corporation (the "Company"), I am pleased to offer you a position as Account Executive.  Your employment by the Company shall be governed by the following terms and conditions (this "Agreement"):

1.      **Duties and Scope of Employment**.

(a) **Position**.   For the term of your employment under this Agreement (your "Employment"), the Company agrees to employ you in the position of Account Executive or in such other position as the Company subsequently may assign to you.  You will report to Natasha Giftos, or to such other person as the Company subsequently may determine.  You will perform the duties and have the responsibilities and authority customarily performed and held by an employee in your position or as otherwise may be assigned or delegated to you by the Company's management.

(b) **Obligations to the Company**.  During your Employment, you shall devote your full business efforts and time to the Company.  During your Employment, without the prior written approval of the Company's Chief Executive Officer, you shall not render services in any capacity to any other person or entity and shall not act as a sole proprietor or partner of any other person or entity or own more than five percent (5%) of the stock of any other corporation. Notwithstanding the foregoing, you may serve on corporate, civic or charitable boards or committees, deliver lectures, fulfill speaking engagements, teach at educational institutions, work on open source projects, serve as an advisor to other companies and programmers, or manage personal investments without such advance written consent, provided that such activities do not individually or in the aggregate interfere with the performance of your duties under this Agreement.  You shall comply with the Company's policies and rules, as they may be in effect from time to time during your Employment.

(c) **No Conflicting Obligations**.  You represent and warrant to the Company that you are under no obligations or commitments, whether contractual or otherwise, that are inconsistent with your obligations under this Agreement.  In connection with your Employment, you shall not use or disclose any trade secrets or other proprietary information or intellectual property in which you or any other person has any right, title or interest and your Employment will

not infringe or violate the rights of any other person.  You represent and warrant to the Company that you have returned all property and confidential information belonging to any prior employer.

(d) **Commencement Date.**  You shall commence full-time Employment as soon as reasonably practicable and in no event later than May 20, 2020.

2.      **Cash and Incentive Compensation.**

(a) **Salary.**  The Company shall pay you as compensation for your services an initial base salary at a gross annual rate of $80,000, and total on target earnings rate of $120,000.  Such salary shall be payable in accordance with the Company's standard payroll procedures.

(b) **Stock Options.**  Subject to the approval of the Company's Board of Directors (the "Board"), the Company shall grant you a stock option covering 0.25% (1/4 of one percent) of the Company's Common Stock (the "Option").  The Option shall be granted as soon as reasonably practicable after the date of this Agreement or, if later, the date you commence full-time Employment.  The exercise price per share will be equal to the fair market value per share on the date the Option is granted, as determined by the Board in good faith compliance with applicable guidance in order to avoid having the Option be treated as deferred compensation under Section 409A of the Internal Revenue Code of 1986, as amended.  There is no guarantee that the Internal Revenue Service will agree with this value.  You should consult with your own tax advisor concerning the tax risks associated with accepting an option to purchase 0.25% (1/4 of one percent) of Company's Common Stock.  The term of the Option shall be ten (10) years, subject to earlier expiration in the event of the termination of your services to the Company.  The Option shall vest and become exercisable at the rate of 25% of the total number of option shares after the first twelve (12) months of continuous service and the remaining option shares shall become vested and exercisable in equal monthly installments over the next three (3) years of continuous service.  The Option will be an incentive stock option to the maximum extent allowed by the tax code and shall be subject to the other terms and conditions set forth in the Company's 2018 Stock Plan and in the Company's standard form of Stock Option Agreement.

3.      **Employee Benefits.**  During your Employment, you shall be eligible to participate in the employee benefit plans maintained by the Company and generally available to similarly situated employees of the Company, subject in each case to the generally applicable terms and conditions of the plan in question and to the determinations of any person or committee administering such plan.

4.      **Business Expenses.**  The Company will reimburse you for your necessary and reasonable business expenses incurred in connection with your duties hereunder upon presentation of an itemized account and appropriate supporting documentation, all in accordance with the Company's generally applicable policies.

5.      **Termination.**

(a) **Employment at Will.**  Your Employment shall be "at will," meaning that either you or the Company shall be entitled to terminate your Employment at any time and for any reason, with or without Cause.  Any contrary representations that may have been made to you shall be superseded by this Agreement.  This Agreement shall constitute the full and complete agreement

between you and the Company on the "at-will" nature of your Employment, which may only be changed in an express written agreement signed by you and a duly authorized officer of the Company.

(b) **Rights Upon Termination**.  Except as expressly provided in herein, upon the termination of your Employment, you shall only be entitled to the compensation and benefits earned and the reimbursements described in this Agreement for the period preceding the effective date of the termination.

6.      **Pre-Employment Conditions.**

(a) **Confidentiality Agreement**.   Your acceptance of this offer and commencement of Employment with the Company is contingent upon the execution, and delivery to an officer of the Company, of the Company's Confidential Information and Invention Assignment Agreement in the form attached as Attachment A hereto (the "Confidentiality Agreement"), prior to or on your Start Date (as defined below).

(b) **Right to Work**.  For purposes of federal immigration law, you will be required to provide to the Company documentary evidence of your identity and eligibility for employment in the United States.  Such documentation must be provided to us within three (3) business days of your Start Date, or our employment relationship with you may be terminated.

(c) **Verification of Information**.  This offer of Employment is also contingent upon the successful verification of the information you provided to the Company during your application process, as well as a general background check performed by the Company to confirm your suitability for Employment.  By accepting this offer of Employment, you warrant that all information provided by you is true and correct to the best of your knowledge, you agree to execute any and all documentation necessary for the Company to conduct a background check and you expressly release the Company from any claim or cause of action arising out of the Company's verification of such information.

7.      **Successors.**

(a) **Company's Successors**.  This Agreement shall be binding upon any successor (whether direct or indirect and whether by purchase, lease, merger, consolidation, liquidation or otherwise) to all or substantially all of the Company's business and/or assets.  For all purposes under this Agreement, the term "Company" shall include any successor to the Company's business or assets that becomes bound by this Agreement.

(b) **Your Successors**.  This Agreement and all of your rights hereunder shall inure to the benefit of, and be enforceable by, your personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees.

8.      **Miscellaneous Provisions.**

(a) **Notice**.  Notices and all other communications contemplated by this Agreement shall be in writing and shall be deemed to have been duly given when personally delivered or when mailed by U.S. registered or certified mail, return receipt requested and postage prepaid.  In your

case, mailed notices shall be addressed to you at the home address that you most recently communicated to the Company in writing.  In the case of the Company, mailed notices shall be addressed to its corporate headquarters, and all notices shall be directed to the attention of its Secretary.

(b) **Modifications and Waivers.**  No provision of this Agreement shall be modified, waived or discharged unless the modification, waiver or discharge is agreed to in writing and signed by you and by an authorized officer of the Company (other than you).  No waiver by either party of any breach of, or of compliance with, any condition or provision of this Agreement by the other party shall be considered a waiver of any other condition or provision or of the same condition or provision at another time.

(c) **Whole Agreement.**  No other agreements, representations or understandings (whether oral or written and whether express or implied) which are not expressly set forth in this Agreement have been made or entered into by either party with respect to the subject matter hereof.  This Agreement and the Confidentiality Agreement contain the entire understanding of the parties with respect to the subject matter hereof.

(d) **Withholding Taxes.**  All payments made under this Agreement shall be subject to reduction to reflect taxes or other charges required to be withheld by law.

(e) **Choice of Law and Severability.**  This Agreement shall be interpreted in accordance with the laws of the State of California without giving effect to provisions governing the choice of law.  If any provision of this Agreement becomes or is deemed invalid, illegal or unenforceable in any applicable jurisdiction by reason of the scope, extent or duration of its coverage, then such provision shall be deemed amended to the minimum extent necessary to conform to applicable law so as to be valid and enforceable or, if such provision cannot be so amended without materially altering the intention of the parties, then such provision shall be stricken and the remainder of this Agreement shall continue in full force and effect.  If any provision of this Agreement is rendered illegal by any present or future statute, law, ordinance or regulation (collectively, the "Law") then that provision shall be curtailed or limited only to the minimum extent necessary to bring the provision into compliance with the Law.  All the other terms and provisions of this Agreement shall continue in full force and effect without impairment or limitation.

(f) **No Assignment.**  This Agreement and all of your rights and obligations hereunder are personal to you and may not be transferred or assigned by you at any time.  The Company may assign its rights under this Agreement to any entity that assumes the Company's obligations hereunder in connection with any sale or transfer of all or a substantial portion of the Company's assets to such entity.

(g) **Counterparts.**  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*[Signature Page Follows]*

4

We are all delighted to be able to extend you this offer and look forward to working with you.  To indicate your acceptance of the Company's offer, please sign and date this letter in the space provided below and return it to me on or before May 15, 2020.  Please indicate the date (either on or before the aforementioned date) on which you expect to begin work in the space provided below (the "Start Date").

Very truly yours,

UNIVERSAL PRODUCT COMPANY, INC.

By: _____
        (signature)

Name: _____

Title: _____

ACCEPTED AND AGREED:

[CANDIDATE FULL NAME]

_____
(signature)

_____
Date

Anticipated Start Date: _____

Attachment A:  Confidential Information and Invention Assignment Agreement

**<u>ATTACHMENT A</u>**

**CONFIDENTIAL INFORMATION AND
INVENTION ASSIGNMENT AGREEMENT**

*(See Attached)*

## UPC Account Executive Job Description:

- Own the entire supplier customer base, including strategy, lead generation, product demonstrations, deal closure, onboarding, and customer success
- Ensure that monthly, quarterly and annual customer acquisition goals are met
- Track all sales-related activities and relevant KPI's in Salesforce.com
- Communicate customer feedback to tech in an effort to constantly improve the UPC app
- Create relevant sales materials for product demonstrations and sales follow ups
- Report to executives with relevant data regarding supplier sales pipelines and forecasting reports
- Present weekly sales updates in company All Hands meetings

Exhibit C

**UNIVERSAL PRODUCT COMPANY, INC.**
954 Lexington Ave. #332
New York, New York 10021

July 6, 2020

Chrissy Reilly

Re:      **EMPLOYMENT AGREEMENT**

Dear Chrissy,

On behalf of UNIVERSAL PRODUCT COMPANY, INC., a Delaware corporation (the "Company"), I am pleased to offer you a position as Sales Development Representative.  Your employment by the Company shall be governed by the following terms and conditions (this "Agreement"):

1.      **Duties and Scope of Employment.**

(a) **Position.**   For the term of your employment under this Agreement (your "Employment"), the Company agrees to employ you in the position of Sales Development Representative or in such other position as the Company subsequently may assign to you.  You will report to Natasha Giftos, or to such other person as the Company subsequently may determine. You will perform the duties and have the responsibilities and authority customarily performed and held by an employee in your position or as otherwise may be assigned or delegated to you by the Company's management. The Company agrees to reevaluate the position no later than October 1, 2020, and together agree to the position and duties of continued employment.

(b) **Obligations to the Company.**   During your Employment, you shall devote your full business efforts and time to the Company.  During your Employment, without the prior written approval of the Company's Chief Executive Officer, you shall not render services in any capacity to any other person or entity and shall not act as a sole proprietor or partner of any other person or entity or own more than five percent (5%) of the stock of any other corporation. Notwithstanding the foregoing, you may serve on corporate, civic or charitable boards or committees, deliver lectures, fulfill speaking engagements, teach at educational institutions, work on open source projects, serve as an advisor to other companies and programmers, or manage personal investments without such advance written consent, provided that such activities do not individually or in the aggregate interfere with the performance of your duties under this Agreement.  You shall comply with the Company's policies and rules, as they may be in effect from time to time during your Employment.

(c) **No Conflicting Obligations.**   You represent and warrant to the Company that you are under no obligations or commitments, whether contractual or otherwise, that are inconsistent with your obligations under this Agreement.  In connection with your Employment,

you shall not use or disclose any trade secrets or other proprietary information or intellectual property in which you or any other person has any right, title or interest and your Employment will not infringe or violate the rights of any other person.  You represent and warrant to the Company that you have returned all property and confidential information belonging to any prior employer.

(d) **Commencement Date**.  You shall commence full-time Employment as soon as reasonably practicable and in no event later than July 13, 2020.

2.    **Cash and Incentive Compensation**.

(a) **Salary**.  The Company shall pay you as compensation for your services an initial base salary at a gross annual rate of $65,000, and total on target earnings rate of $85,000. Such salary shall be payable in accordance with the Company's standard payroll procedures.

3.    **Employee Benefits**.  During your Employment, you shall be eligible to participate in the employee benefit plans maintained by the Company and generally available to similarly situated employees of the Company, subject in each case to the generally applicable terms and conditions of the plan in question and to the determinations of any person or committee administering such plan.

4.    **Business Expenses**.  The Company will reimburse you for your necessary and reasonable business expenses incurred in connection with your duties hereunder upon presentation of an itemized account and appropriate supporting documentation, all in accordance with the Company's generally applicable policies.

5.    **Termination**.

(a) **Employment at Will**.  Your Employment shall be "at will," meaning that either you or the Company shall be entitled to terminate your Employment at any time and for any reason, with or without Cause.  Any contrary representations that may have been made to you shall be superseded by this Agreement.  This Agreement shall constitute the full and complete agreement between you and the Company on the "at-will" nature of your Employment, which may only be changed in an express written agreement signed by you and a duly authorized officer of the Company.

(b) **Rights Upon Termination**.  Except as expressly provided in herein, upon the termination of your Employment, you shall only be entitled to the compensation and benefits earned and the reimbursements described in this Agreement for the period preceding the effective date of the termination.

6.    **Pre-Employment Conditions**.

(a) **Confidentiality Agreement**.    Your acceptance of this offer and commencement of Employment with the Company is contingent upon the execution, and delivery to an officer of the Company, of the Company's Confidential Information and Invention Assignment Agreement in the form attached as Attachment A hereto (the "Confidentiality Agreement"), prior to or on your Start Date (as defined below).

Doc ID: d696ab1a2670bbe58af07e8a22a592b7cd564f0c

(b) **Right to Work.**  For purposes of federal immigration law, you will be required to provide to the Company documentary evidence of your identity and eligibility for employment in the United States.  Such documentation must be provided to us within three (3) business days of your Start Date, or our employment relationship with you may be terminated.

(c) **Verification of Information**.  This offer of Employment is also contingent upon the successful verification of the information you provided to the Company during your application process, as well as a general background check performed by the Company to confirm your suitability for Employment.  By accepting this offer of Employment, you warrant that all information provided by you is true and correct to the best of your knowledge, you agree to execute any and all documentation necessary for the Company to conduct a background check and you expressly release the Company from any claim or cause of action arising out of the Company's verification of such information.

7.     **Successors.**

(a) **Company's Successors.**  This Agreement shall be binding upon any successor (whether direct or indirect and whether by purchase, lease, merger, consolidation, liquidation or otherwise) to all or substantially all of the Company's business and/or assets.  For all purposes under this Agreement, the term "Company" shall include any successor to the Company's business or assets that becomes bound by this Agreement.

(b) **Your Successors.**  This Agreement and all of your rights hereunder shall inure to the benefit of, and be enforceable by, your personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees.

8.     **Miscellaneous Provisions.**

(a) **Notice.**  Notices and all other communications contemplated by this Agreement shall be in writing and shall be deemed to have been duly given when personally delivered or when mailed by U.S. registered or certified mail, return receipt requested and postage prepaid.  In your case, mailed notices shall be addressed to you at the home address that you most recently communicated to the Company in writing.  In the case of the Company, mailed notices shall be addressed to its corporate headquarters, and all notices shall be directed to the attention of its Secretary.

(b) **Modifications and Waivers.**   No provision of this Agreement shall be modified, waived or discharged unless the modification, waiver or discharge is agreed to in writing and signed by you and by an authorized officer of the Company (other than you).  No waiver by either party of any breach of, or of compliance with, any condition or provision of this Agreement by the other party shall be considered a waiver of any other condition or provision or of the same condition or provision at another time.

(c) **Whole Agreement.**  No other agreements, representations or understandings (whether oral or written and whether express or implied) which are not expressly set forth in this Agreement have been made or entered into by either party with respect to the subject matter hereof. This Agreement and the Confidentiality Agreement contain the entire understanding of the parties with respect to the subject matter hereof.

Doc ID: d696ab1a2670bbe58af07e8a22a592b7cd564f0c

(d) **<u>Withholding Taxes</u>**.  All payments made under this Agreement shall be subject to reduction to reflect taxes or other charges required to be withheld by law.

(e) **<u>Choice of Law and Severability</u>**.  This Agreement shall be interpreted in accordance with the laws of the State of California without giving effect to provisions governing the choice of law.  If any provision of this Agreement becomes or is deemed invalid, illegal or unenforceable in any applicable jurisdiction by reason of the scope, extent or duration of its coverage, then such provision shall be deemed amended to the minimum extent necessary to conform to applicable law so as to be valid and enforceable or, if such provision cannot be so amended without materially altering the intention of the parties, then such provision shall be stricken and the remainder of this Agreement shall continue in full force and effect.  If any provision of this Agreement is rendered illegal by any present or future statute, law, ordinance or regulation (collectively, the "<u>Law</u>") then that provision shall be curtailed or limited only to the minimum extent necessary to bring the provision into compliance with the Law.  All the other terms and provisions of this Agreement shall continue in full force and effect without impairment or limitation.

(f) **<u>No Assignment</u>**.  This Agreement and all of your rights and obligations hereunder are personal to you and may not be transferred or assigned by you at any time.  The Company may assign its rights under this Agreement to any entity that assumes the Company's obligations hereunder in connection with any sale or transfer of all or a substantial portion of the Company's assets to such entity.

(g) **<u>Counterparts</u>**.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*[Signature Page Follows]*

Doc ID: d696ab1a2670bbe58af07e8a22a592b7cd564f0c

We are all delighted to be able to extend you this offer and look forward to working with you.  To indicate your acceptance of the Company's offer, please sign and date this letter in the space provided below and return it to me on or before July 8, 2020.  Please indicate the date (either on or before the aforementioned date) on which you expect to begin work in the space provided below (the "Start Date").

Very truly yours,

UNIVERSAL PRODUCT COMPANY, INC.

By: _____
       (signature)

Name: M. Murphy

Title: CEO

ACCEPTED AND AGREED:

Chrissy Reilly

_Christine Reilly_

_____
(signature)

07 / 06 / 2020
_____
Date

Anticipated Start Date: 07 / 06 / 2020

Attachment A:  Confidential Information and Invention Assignment Agreement

Doc ID: d696ab1a2670bbe58af07e8a22a592b7cd564f0c

## <u>ATTACHMENT A</u>

**CONFIDENTIAL INFORMATION AND
INVENTION ASSIGNMENT AGREEMENT**

*(See Attached)*

Christine Reilly

**Who We are Looking For:**

The Sales Development Representative is responsible for achieving monthly, quarterly, and annual quota attainment with a focus on acquiring new business.

The ideal candidate thinks critically, challenges the status quo, and believes that great ideas are priceless. Daily activities involve managing heavy outbound calling, prospecting, lead generation activities, managing onboarding and providing customer feedback.

**UPC Sales Development Representative Job Description:**

- Prospect for new clients via phone calls, emails, and social media outreach at high volume
- Actively seek out new potential client accounts and make the first contact with those accounts to generate interest
- Work with Account Executives and the Director of Sales to ensure qualified leads convert into paid clients
- Track all sales-related activities and relevant KPIs in Salesforce.com
- Communicate customer feedback to tech in an effort to constantly improve the UPC app
- Report to executives with relevant data regarding sales pipelines
- Present weekly sales updates in company All Hands meetings
- Own supplier onboarding tracker along with Account Executives to ensure customers are actively engaged with UPC

**Must Haves:**

- 1-2 years sales experience
- Deep entrepreneurial spirit and desire to learn how to build a customer base from the ground up
- Ability to successfully develop, manage, and optimize leads using email, phone, and social media (mainly LinkedIn)
- Ability to multitask and maintain multiple conversational threads
- Willingness to work across teams to accomplish strategic goals (i.e. sales and marketing)
- Competitive drive to complete tasks and find solutions to difficult problems

**Our Story**

Universal Product Company (UPC) is the world's first buyer-centric, private marketplace built specifically for major retailers. Trusted worldwide, our mobile app enables top retailers to discover trends, negotiate instantly, and move inventory—at lightning speeds. UPC helps major retailers digitize wholesale buying decisions, discover key trends and amplify the success of best-selling items.

DOCSSV1:257743.1
1-3126 LDN
US_WEST:22888767.3
4851-4753-7174\1

Doc ID: d696ab1a2670bbe58af07e8a22a592b7cd564f0c

   **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | UPC Employee Agreement - Chrissy Reilly |
| **FILE NAME** | UPC Employment Ag...hrissy Reilly.pdf |
| **DOCUMENT ID** | d696ab1a2670bbe58af07e8a22a592b7cd564f0c |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

**SENT**    **07 / 06 / 2020**    Sent for signature to Chrissy Reilly (chrissy@upc.co) and
15:53:55 UTC    Michael Murphy (m@upc.co) from natasha@upc.co
IP: 100.8.70.177

**VIEWED**    **07 / 06 / 2020**    Viewed by Chrissy Reilly (chrissy@upc.co)
20:37:40 UTC    IP: 108.50.249.162

**VIEWED**    **07 / 06 / 2020**    Viewed by Michael Murphy (m@upc.co)
20:54:42 UTC    IP: 207.183.170.241

**SIGNED**    **07 / 06 / 2020**    Signed by Chrissy Reilly (chrissy@upc.co)
20:53:30 UTC    IP: 108.50.249.162

**SIGNED**    **07 / 06 / 2020**    Signed by Michael Murphy (m@upc.co)
20:55:19 UTC    IP: 207.183.170.241

**COMPLETED**    **07 / 06 / 2020**    The document has been completed.
20:55:19 UTC

Powered by **HELLOSIGN**

# Exhibit D

DocuSign Envelope ID: DE764524-D240-428B-AE83-C6427ABBECB8

## UNIVERSAL PRODUCT COMPANY, INC.

## AMENDMENT NO. 1 TO EMPLOYMENT AGREEMENT

This Amendment No. 1 to Employment Agreement (this "Amendment") is made as of October 1, 2020 by and between Universal Product Company, Inc., a Delaware corporation (the "Company"), and Chrissy Reilly ("Employee").

BACKGROUND

The Company and the Employee entered into an Employment Agreement (the "Agreement") dated as of July 6, 2020. The Company and the Employee desire to amend the terms of the Agreement to provide for certain changes to Employee's compensation.  Unless specifically defined in this Amendment, all capitalized terms contained herein shall have the meaning assigned to them in the Agreement.

NOW, THEREFORE, in consideration of the mutual covenants exchanged, the parties agree as follows:

1.      Effective as of October 1, 2020, your position with the Company will be Account Manager.

2.      Section 2 of the Agreement shall be restated in its entirety as follows:

"2.      **Cash and Incentive Compensation.**

(a)      **Salary.**  The Company shall pay you as compensation for your services an initial base salary at a gross annual rate of $65,000, and total on target earnings rate of $85,000. Effective as of October 1, 2020, the Company shall pay you as compensation for your services an initial base salary at a gross annual rate of $80,000, and an additional on target earnings rate of $20,000. Such salary shall be payable in accordance with the Company's standard payroll procedures.

(b)      **Stock Options.**   Subject to the approval of the Company's Board of Directors (the "Board"), the Company shall grant you a stock option covering 26,249 shares of the Company's Common Stock (the "Option").  The Option shall be granted as soon as reasonably practicable after the date of this Amendment.  The exercise price per share will be equal to the fair market value per share on the date the Option is granted, as determined by the Board in good faith compliance with applicable guidance in order to avoid having the Option be treated as deferred compensation under Section 409A of the Internal Revenue Code of 1986, as amended.  There is no guarantee that the Internal Revenue Service will agree with this value.  You should consult with your own tax advisor concerning the tax risks associated with accepting an option to purchase the Company's Common Stock.  The term of the Option shall be ten (10) years, subject to earlier expiration in the event of the termination of your services to the Company.  The Option shall vest and become exercisable at the rate of 25% of the total number of option shares on the one-year anniversary of October 1, 2020 and the remaining option shares shall become vested and exercisable in equal monthly installments over the next three (3) years thereafter, in each case subject to your continuous service.  The Option will be an incentive stock option to the maximum extent allowed by the tax code and shall be subject to the other terms

and conditions set forth in the Company's 2018 Stock Plan and in the Company's standard form of Stock Option Agreement."

3.      Except as amended or superseded by this Amendment, all other terms and conditions of the Agreement shall remain in full force and effect. This Amendment and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of California, without giving effect to principles of conflicts of law. This Amendment is the result of negotiations between and has been reviewed by each of the parties hereto and their respective counsel, if any; accordingly, this Amendment shall be deemed to be the product of all of the parties hereto, and no ambiguity shall be construed in favor of or against any one of the parties hereto.

The parties have executed this Amendment No. 1 to Employment Agreement as of the date first set forth above.

**THE COMPANY:**                              **EMPLOYEE:**

UNIVERSAL PRODUCT COMPANY, INC.      CHRISSY REILLY


By: _____              _____
                                                                         Signature
Name: Michael Murphy
Title: Chief Executive Officer

# Exhibit E

**UNIVERSAL PRODUCT COMPANY, INC.**

**AMENDMENT NO. 2 TO EMPLOYMENT AGREEMENT**

This Amendment No. 2 to Employment Agreement (this "Amendment") is made as of March 16, 2021 by and between Universal Product Company, Inc., a Delaware corporation (the "Company"), and Chrissy Reilly ("Employee").

BACKGROUND

The Company and the Employee entered into an Employment Agreement (the "Agreement") dated as of July 6, 2020 as amended by that certain Amendment No. 1 to Employment Agreement dated as of October 1, 2020. The Company and the Employee desire to amend the terms of the Agreement to provide for certain changes to Employee's compensation. Unless specifically defined in this Amendment, all capitalized terms contained herein shall have the meaning assigned to them in the Agreement.

NOW, THEREFORE, in consideration of the mutual covenants exchanged, the parties agree as follows:

1.      Effective as of March 16, 2021, your position with the Company will be Product Growth.

2.      Section 2 of the Agreement shall be restated in its entirety as follows:

a.      **Salary.**  The Company shall pay you as compensation for your services an initial base salary at a gross annual rate of $65,000, and total on target earnings rate of $85,000. Effective as of October 1, 2020, the Company shall pay you as compensation for your services a base salary at a gross annual rate of $80,000, and an additional on target earnings rate of $20,000. Effective as of March 16, 2021, the Company shall pay you as compensation for your services a base salary at a gross annual rate of $110,000. Such salary shall be payable in accordance with the Company's standard payroll procedures.

b.      **Stock Options.**   Subject to the approval of the Company's Board of Directors (the "Board"), the Company shall grant you a stock option covering 26,249 shares of the Company's Common Stock (the "Option"). The Option shall be granted as soon as reasonably practicable after the date of this Amendment.  The exercise price per share will be equal to the fair market value per share on the date the Option is granted, as determined by the Board in good faith compliance with applicable guidance in order to avoid having the Option be treated as deferred compensation under Section 409A of the Internal Revenue Code of 1986, as amended.  There is no guarantee that the Internal Revenue Service will agree with this value.  You should consult with your own tax advisor concerning the tax risks associated with accepting an option to purchase the Company's Common Stock.  The term of the Option shall be ten (10) years, subject to earlier expiration in the event of the termination of your services to the Company.  The Option shall vest and become exercisable at the rate of 25% of the total number of option shares on the one-year anniversary of October 1, 2020 and the remaining option shares shall become vested and exercisable in equal monthly installments over the next three (3) years thereafter, in each case subject to

your continuous service.  The Option will be an incentive stock option to the maximum extent allowed by the tax code and shall be subject to the other terms and conditions set forth in the Company's 2018 Stock Plan and in the Company's standard form of Stock Option Agreement."

c. **Product Performance Bonus**.  Effective as of March 16, 2021, you will be eligible to earn an annual discretionary Product Performance Bonus (the "Product Performance Bonus") in an amount up to $10,000 per year, as may be awarded to you by the Company in accordance with its policies and procedures at the sole discretion of the Board.  Any such bonus shall be payable in the manner and at the time specified by the Company at the time any such bonus is awarded.  The initial Product Performance Bonus, if approved by the Board, will be paid on or about December 15, 2021. You must be employed by the Company at the time the Product Performance Bonus is actually paid to be eligible to receive the Product Performance Bonus.

3.      Except as amended or superseded by this Amendment, all other terms and conditions of the Agreement shall remain in full force and effect. This Amendment and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law. This Amendment is the result of negotiations between and has been reviewed by each of the parties hereto and their respective counsel, if any; accordingly, this Amendment shall be deemed to be the product of all of the parties hereto, and no ambiguity shall be construed in favor of or against any one of the parties hereto.

The parties have executed this Amendment No. 2 to Employment Agreement as of the date first set forth above.

**THE COMPANY:**                          **EMPLOYEE:**

UNIVERSAL PRODUCT COMPANY, INC.      CHRISSY REILLY

By: _Michael Murphy_____           _Christine Quinn Reilly_____
                                                        Signature
Name: Michael Murphy
Title: Chief Executive Officer